UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRIAN MANSER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-CV-1378-CAN |
| | ) | |
| CAROLYN COLVIN | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

In January 2011, Plaintiff, Brian Manser ("Manser") filed his complaint in this Court

seeking reversal of the Commissioner's final decision denying his application for Disability

Insurance Benefits.  Alternatively, Manser seeks remand for further consideration of his

application for Disability Insurance Benefits.  On June 6, 2014, Manser filed Plaintiff's Social

Security Opening Brief in Support of Judgment or Remand to the Commissioner.  [Doc. No. 18].

On September 11, 2014, Defendant Commissioner of Social Security ("Commissioner") filed a

response, asking the Court to affirm the decision denying benefits.  [Doc. No. 23].  Manser filed

a reply brief on September 26, 2014.  [Doc. No. 24].  This Court may enter a ruling in this matter

based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.    RELEVANT BACKGROUND**

**A.    Previous Disability Application and Adjudication**

In January 2011, Manser filed an application for Title II Disability Insurance Benefits

("DIB") and Title XVI Supplemental Security Income ("SSI") with the Social Security

Administration ("SSA") alleging disability beginning December 23, 2010.  This was Manser's

second application for DIB and SSI. The first application, filed in 2010, alleged an onset date of December 14, 2007, the last day Manser worked. On December 22, 2010, Manser's first application was denied. The ALJ's unfavorable decision became final when the Appeals Council denied review. Manser did not seek judicial review of this decision. Instead, Manser filed the application at issue in this case, which was denied by the SSA on March 2, 2011, and upon reconsideration on April 4, 2011. An administrative law judge ("ALJ") held a hearing regarding Manser's second application on April 24, 2012, and issued an opinion denying both claims on June 7, 2012. The Appeals Council denied Manser's request for a review on October 17, 2013, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

### B. Personal Facts

Manser was born on April 10, 1976, making him thirty-one years old at the time of the initially alleged date of disability onset and thirty-four years old at the time of his second DIB/SSI application. He lives with his wife and two children along with his aunt who provides financial support for the family. Manser has a GED and, prior to his original 2007 alleged onset date, worked as a machine operator, engine part inspector, and muffler repair technician. The jobs required extensive time on his feet. His work as a machine operator and inspector required constant lifting of items weighing between twenty and seventy-five pounds.

### C. Relevant Medical Evidence

As part of the proceedings related to his second DIB/SSI application, Manser provided the ALJ with medical evidence from his December 2010 application date until the hearing date in August 2012. He also referred the ALJ to the medical evidence included in the record of his

first DIB/SSI application.  As relevant in this action, the records documented Manser's doctor visits and treatment for back pain, ankle, and carpel tunnel pain.

Prior to the current adjudication onset date, Manser was diagnosed in 2008 by neurosurgeon Dr. Langheinrich with spinal stenosis after an MRI revealed disc degeneration, even though Manser's neurological exam had shown no major deficits.  Dr. Langheinrich recommended that Manser should consider spinal fusion surgery if epidural steroid injections did not provide relief.  After Medicaid refused to conduct another MRI to ascertain Manser's surgical options, Dr. Langheinrich referred Manser to Dr. Phuong, a neurosurgeon with Indiana University Medical Center.

In July 2009, Dr. Phuong ordered a new MRI, which showed moderate spinal stenosis at L4-S1 and more severe stenosis at T11-T12.  While surgery was among the treatment recommendations, Manser was concerned about the associated risks of invasive back surgery. Dr. Phuong opined that Manser's condition could progressively degenerate over time.  He also concluded that Manser would have difficulty sitting for more than twenty minutes at a time without changing positions and that standing for more than an hour a day would likely be challenging.  Dr. Phoung also believed Manser would need to lie down periodically during the day to ease his back pain.

Dr. Phuong's findings were consistent with the conclusions drawn by two Social Security consultative physicians engaged in response to Manser's first DIB/SSI application.  In March 2009, Dr. Rudolph examined Manser and noted that he complained of back pain and reported his spinal stenosis diagnosis.  Dr. Rudolphs exam revealed muscular skeletal abnormalities including a wide based gait.  Another Social Security consultant, Dr. Montoya, then reviewed Manser's

medical file on April 29, 2009, and opined that Manser would be able to stand for at least two hours in an eight-hour day.

In addition to back pain, Manser also had been experiencing foot and ankle pain in 2011. In February, Manser met with Dr. Sheedy to address his symptoms. A MRI of his ankles showed moderate to severe degeneration, edema, and tearing of the prevoneus brevis tendon. In that same month, Manser visited Dr. Coulter, a Social Security consultative examiner. Dr. Coulter conducted a disability physical and found skeletal abnormalities associated with arthritic degenerative disc disease, which was causing Manser's joint pain and stiffness. Dr. Coulter also noted that Manser displayed a slightly unsteady gait and was unable to raise them when lying down. Dr. Coulter concluded that Manser could maintain his balance and carry ten pounds occasionally, but Manser would be unable to stand or walk more than two hours in an eight-hour day.

On March 2, 2011, Dr. Dobson, a Social Security medical expert, provided a second opinion regarding Manser's ability to work after reviewing Manser's medical file. Dr. Dobson opined that Manser could frequently lift ten pounds, stand or walk for at least two hours in an eight-hour day, sit for six hours in an eight-hour day, and occasionally climb, stoop, kneel, crouch, but never crawl or balance. Dr. Dobson based his assessment on Dr. Coulter's findings and Manser's 2009 lumbar and thoracic MRI. In 2011, Dr. Sands, another Social Security expert, reconsidered Manser's medical file and reaffirmed that Manser only retained the capacity to perform sedentary work.

In June 2011, Manser met with Dr. Ronback, a treating physician, regarding increased ankle and foot pain. Based on the X-rays that showed further degenerative changes, the doctor prescribed physical therapy and a foot brace. Dr. Ronback also recommended that Manser visit

his neurosurgeon to reevaluate his spinal stenosis because she believed his neurological condition seemed to be deteriorating. In August, Manser met with Dr. Ronback again to discuss hand pain related to carpal tunnel at which time she referred him to Dr. Rahn, a neurosurgeon, regarding his back pain. On August 25, 2011, Manser met with Dr. Rahn who ordered an MRI. At an appointment in September, Dr. Rahn explained that the MRI imaging result showed "disc herniation centrally causing moderate stenosis at L 4-5 and 5-S1, [with the] lateral recess [being] fairly severe." Doc. No. 14 at 560. Dr. Rahn prescribed Tramadol, a pain reliever, and recommended epidural injections.

### D.    ALJ's Opinion

After the hearing, the ALJ issued a written decision with the following findings based on the five-step disability evaluation prescribed in the SSA's regulations. At Step One, the ALJ found that Manser had not engaged in substantial gainful activity since December 23, 2010, the day after the previously issued, administratively final, unfavorable decision. At Step Two, the ALJ found Manser suffers from severe impairments consisting of multilevel degenerative disc disease, bilateral degenerative joint disease of the ankles, and obesity. The ALJ also found two "non-severe" medical impairments: bilateral "trigger" finger and mild right carpal tunnel syndrome ("CTS"). At Step Three, the ALJ found that Manser's impairments did not meet or medically equal the severity of a listed impairment. The ALJ also found that Manser had the residual function capacity ("RFC") to perform light work, but with limits. The ALJ found Manser could:

> only occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds . . . [could] occasionally balance, stoop, kneel, crouch, and/or crawl . . . must avoid uneven slippery surfaces, unprotected heights, moving mechanical parts, and vibration . . . [and] is further limited to frequent handling and fingering with the right upper extremity, with no limits to the left upper extremity.

Doc. No. 14 at 31.  At Step Four, the ALJ found that Manser could not perform any past relevant work.  After considering Manser's age, education, work experience, and RFC, the ALJ determined that jobs existed in the national economy that Manser could perform, such as clerical router, cashier, or merchandise marker, at Step Five.

Based on these findings, the ALJ determined that Manser had not been disabled from December 14, 2007, through the date of his written decision issued June 7, 2012.  Manser filed his complaint in this Court on December 30, 2013, requesting review and remand of the decision.

II.    ANALYSIS

A.    Standard of Review

The Social Security Act authorizes judicial review of the final decisions of the Commissioner, whose factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart,* 425 F. 3d 345, 351 (7th Cir. 2005).  Substantial evidence is more than a mere scintilla, but may be less than the weight of the evidence.  *Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004).  Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v Perales,* 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

When reviewing agency decisions, a court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005).  Therefore, the question upon judicial review of an ALJ's finding that a

claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013).

At the minimum, an ALJ must articulate his analysis of the evidence so as to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered important evidence. *See Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). A reviewing court must not substitute its own opinion for that of the ALJ's or re-weigh the evidence, but must assess whether the ALJ fulfilled his obligation to build a logical bridge from the evidence to his conclusion. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)).

**B.     Disability Standard**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must both prevent him from doing his previous work and, considering his age, education, and work experience, prevent him from engaging in any other type of substantial gainful activity that exists in significant

numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)–(f); 414.920(e)–(f).[1]

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Scheck*, 357 F.3d at 699–700.

## C.     Issues Presented for Review

Manser seeks reversal and remand of the ALJ's decision arguing that the ALJ failed to build a logical bridge between the evidence and his conclusion that Manser has a RFC for light work and, therefore, is not disabled. First, Manser argues that the ALJ ignored and misconstrued medical evidence in the record relating to Manser's spinal stenosis by improperly invoking the res judicata standard. Second, Manser alleges that the ALJ "played doctor" when he determined that Manser had the RFC to perform light work without giving proper weight to the opinions of

---

[1] Regulations for DIB are found at 20 C.F.R. pt. 404 and SSI regulations are found at 20 C.F.R. pt. 416. Because they are essentially the same, the Court will cite to Part 404 throughout this order.

doctors that advised restricting Manser to sedentary work. As such, Manser contends that the ALJ failed to support his decision with substantial evidence. For the reasons discussed below, the Court agrees.

1.    **The ALJ improperly applied the legal principle of res judicata when he refused to consider relevant medical evidence in the record of Manser's first DIB/SSA application.**

In reaching the decision to deny benefits, the ALJ invoked res judicata and refused to consider medical evidence from Manser's first DIB/SSI application. Doc. No. 14 at 32. Manser challenges the ALJ's decision contending that res judicata does not apply to the relevant medical evidence regarding his condition that was presented during the first claim period. In particular, Manser argues that res judicata does not preclude full consideration of the earlier medical evidence related to his spinal stenosis because it could further illuminate the current medical evidence produced in conjunction with Manser's instant DIB/SSI application. Manser believes the MRI results, medical opinions, and findings of Dr. Montoya and Dr. Rudolph, two Social Security physicians, and Dr. Phuong, a neurosurgeon, which were part of the earlier record, should have been considered in conjunction with the evidence presented to support his second application.

The Commissioner rejects Manser's argument arguing that the ALJ properly gave the previous evidence no weight after determining that it did not apply to the current adjudication period and that it was less persuasive in light of the passage of time and additional evidence generated since the denial of Manser first application.

Res judicata is a question of law that bars any attempt to relitigate a previous judgment denying benefits. *Groves v. Apfel*, 158 F.3d 809, 810 (7th Cir. 1998). A final judgment by the Commissioner "does not render evidence in support of the application inadmissible to establish,

though only in combination with later evidence, that [the claimant became] disabled after the period covered by the first proceeding." *Id.* When a disease is a progressive condition, evidence from a previous proceeding may be used to support later evidence affirming the condition and disability. *Id.* The medical evidence "might reinforce or illuminate or fill in the gaps in the evidence developed for the second proceeding." *Id.* Only when there is no new evidence that shows deterioration or worsening of claimant's condition may the ALJ exclude the prior medical record. *Buehler v. Astrue*, No. 08-cv-732, 2009 WL 2495749, at *6 (W.D. Wis. Aug. 12, 2009).

Here, the ALJ only used medical evidence from the first proceeding, including the test results and medical opinions Manser cites, as background information "because they were addressed previously by the December 22, 2010, unfavorable decision." Doc. No. 14 at 37. He also discounted the prior medical opinions because those opining physicians had not treated Manser since his first application was denied. However, the ALJ cited no authority to support this proposition.

Medical evidence from a prior claim should be considered if the medical evidence from the current claim period shows deterioration or worsening of a claimant's condition. *See Buehler*, 2009 WL 2495749, at *6. Manser contends current medical evidence does just that. In particular, Manser cites to the results of a 2011 MRI ordered by his neurosurgeon, Dr. Rahn. Manser explains that he had been referred to Dr. Rahn by Dr. Ronback, who treated his ankle and hand issues. Concerned about Manser's neurological deficits and the apparent deterioration of his spinal stenosis, Dr. Ronback referred Manser to Dr. Rahn to address his ongoing back issues. In September 2011, Dr. Rahn reviewed Manser's MRI results and noted that they showed "disc herniation centrally causing moderate stenosis at L 4-5 and 5-S1, [with the] lateral recess [being] fairly severe." Doc. No. 14 at 560.

The ALJ did not reference the 2011 MRI results in his opinion even though he acknowledged that Manser had been diagnosed with "multilevel degenerative disc disease with some foraminal and/or central canal narrowing at different levels" based on MRIs taken in 2009. Furthermore, the ALJ precluded further exploration of issues related to Manser's spinal stenosis by ignoring Dr. Ronback's rationale for referring Manser to Dr. Rahn. The Court agrees with Manser that the 2011 MRI results and their interpretation by Dr. Rahn could be medical evidence documenting a deterioration or worsening of Manser's chronic back condition, which necessarily opens the door to the medical evidence from the record of Manser's first application. Moreover, the progressive nature of spinal stenosis suggests that Manser's past medical evidence may reinforce, illuminate, or fill in gaps in the evidence presented with Manser's current application. *See Groves,* 158 F.3d at 810. Because the ALJ did not discuss the 2011 MRI in his opinion, the Court cannot determine whether the ALJ considered this evidence and its potential to show deterioration or worsening of Manser's spinal stenosis.

Furthermore, Manser directs the Court's attention to the following facts that may show that the ALJ's analysis of the medical evidence was unduly affected by keeping the record prior to 2011 closed. For example, Manser compares the positional limitations found in his first RFC to those in the instant RFC. The first ALJ found that Manser's RFC "limited [him] to jobs which allow him to change positions every fifteen to twenty minutes." Doc. No. 14 at 145. The present ALJ, however, found that Manser could stand for six hours without the need to sit or change positions, implying that Manser had improved and would be more functional while working. *Id.* at 31 n.2. In addition, Manser suggests that the agency's own reviewing physicians, opining on Manser's second application, relied on the earlier medical evidence to conclude that Manser could only perform sedentary work. Accordingly, Manser challenges the ALJ's decision to

afford the reviewing doctors' opinions little weight and to give no weight to the opinion

February 2011 of consultative examiner Dr. Coulter finding the opinion conclusory with alleged

limitations unsupported by the evidence. Doc. No. 14 at 33. These facts further bring into

question what effect the review of medical evidence from the first claim would or could have on

Manser's RFC determination in this second application.

Because Manser has shown that medical evidence from his first disability application

could show deterioration or worsening of his back condition and could have affected the

opinions of Social Security doctors solicited for the instant case, the exception to the res judicata

standard applies. The ALJ should consider the medical evidence included in the previous record.

Despite the Commissioner's argument to the contrary, the Court cannot ascertain whether the

ALJ's lack of attention to the previous medical evidence was harmless error. Therefore, the

Court must remand for further proceedings consistent *Groves* and the res judicata standard.

> **2.      The ALJ did not support his RFC determination with substantial evidence in light of the medical evidence on record.**

As part of his determination that Manser retained the RFC to perform light work, the ALJ

limited Manser to work that involved no more than six hours of standing. In reaching this

conclusion, the ALJ gave no weight to the opinions of two physicians, Drs. Phuong and

Montoya, whose opinions were included in the record for Manser's first DIB/SSI application.

Both doctors opined in 2009 that Manser's back condition would restrict him to standing no

more than two hours per day, a limitation consistent with an RFC to perform no more than

sedentary work.

Similarly, the ALJ discounted the opinions of three Social Security physicians, Drs.

Coulter, Dobson, and Sands, who were consulted on Manser's second DIB/SSI application. Like

Drs. Phuong and Montoya, each of these three consultative physicians opined that Manser should

be limited to sedentary work involving no more than two hours of standing. The ALJ explained that he had given these three medical opinions, little weight because they were conclusory and unsupported by medical evidence.

Manser challenges the ALJ's RFC determination arguing first and foremost that the ALJ erred when he concluded that Manser was capable of light work despite all the medical opinions in the record, which opined that Manser should be limited to sedentary work. In particular, Manser contends that by dismissing the medical opinions, symptoms, and diagnostics in the record, the ALJ "played doctor," or in other words, improperly interpreted raw medical data and and used his own lay opinion to conclude that Manser is not disabled under the Social Security Act. Asserting that the ALJ's RFC of light work is not based on any medical opinion, Manser asks the Court to remand based on the ALJ's failure to support his RFC determination, and ultimately the disability decision, with substantial evidence.

Not surprisingly, the Commissioner asks the Court to affirm the ALJ's decision. The Commissioner contends that the ALJ is not required to adopt any particular medical opinion and that he, not any doctor, ultimately retained the authority to determine Manser's RFC. In sum, the Commissioner argues that Manser has unsuccessfully nitpicked the ALJ's decision; that the ALJ reasonably and thoroughly reviewed Manser's record as a whole; and that the ALJ's decision is supported by substantial evidence. The Court is not persuaded.

      **a.**      **When discounting the medical opinions limiting Manswer to sedentary work, the ALJ did not build a logical bridge to support his conclusion that Manser retained the RFC to stand for six hours a day.**

An individual's RFC demonstrates his ability to do physical and mental work on a sustained basis despite functional limitations caused by any medically determinable impairments and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a

proper RFC determination, the ALJ must consider all of the relevant evidence in the record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996.

While an ALJ is not required to address every piece of evidence in the record, he must "provide an 'accurate logic bridge' between the evidence and the conclusion that the claimant is not disabled" thereby allowing the reviewing court to properly assess the validity of the ALJ's findings and provide the claimant a meaningful judicial review. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). An ALJ cannot ignore "an entire line of evidence that is contrary to the ruling." *Golembiewski v Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Otherwise, the reviewing court cannot determine whether the ALJ relies upon substantial evidence in reaching his conclusion. *Id.*

In determining the proper weight to accord medical opinions, the ALJ must consider the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(1)(6); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other substantial evidence in the record. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). The ALJ is not bound by conclusory statements of doctors or medical opinions that are unsupported or inconsistent with substantial evidence in the record. *See Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000).

Moreover, an ALJ must not "succumb to the temptation to play doctor and make their own independent medical findings." *Clifford*, 227 F.3d at 870. "[B]ecause an [ALJ] as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). An ALJ must not "substitute his own judgment" for a doctor's opinion without relying on some other medical evidence or authority in the record. *Clifford,* 227 F.3d at 870; *see also Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992).

In making his RFC determination, the ALJ gave little or no weight to each medical opinion in Manser's current record. First, the ALJ found Dr. Coulter's opinion to be of little weight explaining that it was conclusory in nature and that the actual exam failed to support the doctor's conclusions regarding Manser's functional limitations. Manser, however, points to Dr. Coulter's notes that show abnormalities on exam, such as a slightly unsteady gait and the inability to raise his legs from a supine position while only being able to lift his legs with difficulty from a seated position. Manser argues that this evidence supports Dr. Coulter's opinion despite the ALJ's opposite conclusion. Furthermore, Manser states that Dr. Coulter, as a physician, is qualified to make medical conclusions based on his interpretation of raw medical data, while the ALJ is not.

Second, the ALJ gave little weight to the opinions of Drs. Dobson and Sands, the state agency medical consultants who reviewed Manser's medical record as part of the current application process. The ALJ found the opinions to be "partially consistent" with the objective medical evidence regarding Manser's postural limitations, but asserted that the totality of evidence indicated that Manser was "not as limited exertionally, but more limited

environmentally." Doc. No. 14 at 36. Manser finds the ALJ's conclusion puzzling at best without sufficient explanation from the ALJ to know what exactly he meant by the statement.

Moreover, Manser distinguishes the evidence cited by the ALJ in support of this conclusion. Specifically, Manser challenges the ALJ's reliance on the February 2012 notes of a doctor Manser saw for headings and hand pain. The doctor noted that Manser had a normal gait and the ability to heel-toe and tandem walk without a problem during the visit, but does not provide a functional assessment of Manser's physical capabilities or discuss any limitations. In addition, on December 15, 2011, Manser points to another physician report from December 15, 2011, that noted unsteadiness in Manser's "gait and station," which the ALJ did not cite, but Manser contends evidences consistent, ongoing, and documented gait problems supportive of Dr. Dobson's and Dr. Sands's opinions.

Third, the ALJ gave no weight to the opinions of Drs. Phuong and Montoya, as discussed earlier, applying the doctrine of res judicata.

Instead of crediting any of these medical opinions restricting Manser to sedentary work, the ALJ cited a mosaic of data from the record to support his RFC determination. For instance, the ALJ interpreted the record to include few back related complaints and abnormal findings. The ALJ also used Manser's decision to pursue a conservative course of treatment to supported his finding that Manser could stand for up to six hours and occasionally lift twenty pounds. Yet like Manser contends, the ALJ's choice of evidence does not create a logical bridge between the evidence and his RFC determination.

As suggested above, the ALJ found Manser's lack of complaints about his back significant. Yet the evidence cited shows that Manser did not complain about his back in the context of a visit to a doctor treating his arthritic ankles. Similarly, the ALJ found it interesting

that Dr. Ronback's notes only touched on this issue of Manser's back problems even though Manser's only visited Dr. Ronback for treatment of his ankle and hand problems. The ALJ's analysis of Dr. Ronback's assessment of Manser's back pain was also incomplete because she intentionally referred Manser to Dr. Rahn, a neurosurgeon, out of specific concern about his his back complaints after noting neurological deficts.

In addition, the ALJ relies on examination data and neurological function results, which he describes as "benign," in determining that the symptoms cause no significant impairment. The ALJ specifically looked to the neurological examination results from Dr. Sheedy, Dr. Coulter, and Dr. Rahn. Only Dr. Coulter's exam results regarding Manser's spinal stenosis were interpreted through an accompanying functionality assessment. Yet, the ALJ only gave Dr. Coulter's opinion little weight and assigned a less restrictive RFC than Dr. Coulter's functionality assessment recommended. Moreover, the ALJ noted Dr. Rahn's August 2011 report that Manser presented neurologically intact, but ignored Dr. Rahn's analysis of the 2011 MRI that showed disc degeneration and disc herniation.

In declining Manser's claim, the ALJ also referenced Manser's decision to go with a conservative treatment plan by forgoing an epidural steroid injection for his finger to alleviate the pain associated with carpal tunnel. Yet the ALJ fails to mention that Manser declined the epidural because he experienced little relief from a previous injection. The ALJ also cited evidence of non-compliance with physical therapy as a reason to discount Manser's allegations about the limiting nature of his impairments without specifying what evidence in the physical therapy records support a conclusion of non-compliance.

While the ALJ is not bound by medical opinions that are unsupported or inconsistent with substantial evidence in the record, Manser's medical records include five medical opinions that

recommend limiting him to sedentary work. The opinions are supported by MRI results that were used to form a diagnosis from which his functional limitations were determined. In giving no weight or little weight to these opinions, the ALJ "did not cite to any medical report or opinion that contradicts" any of the doctor's conclusions regarding functionality. *See Clifford*, 227 F.3d at 870. Moreover, the ALJ left a gap in the logical bridge from the evidence in the record to his determination that Manser retains the capacity to perform light work by failing to address the medical evidence from the prior claim, to explain the weight given to the medical opinions in the record, to consider information relevant to Manser's spinal degenerative back condition, and to connect his conclusions discounting Manser's alleged limitations to objective evidence. As such, the ALJ ignored a significant portion of evidence making it difficult for the Court to determine if the ALJ's decision is based on substantial evidence. *Golembiewski*, 322 F.3d at 917.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's RFC determination is not supported by substantial evidence. As a result, the Court **GRANTS** Manser's request for remand under sentence four of 42 U.S.C. § 405(g). [Doc. No. 18]. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. The Clerk is **DIRECTED** to terminate this case and enter judgment in favor of Manser.

**SO ORDERED**

Dated this 18th day of May, 2015.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge